NO JS6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-09511-RGK | Date | September 16, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Seek Capital, LLC et al.* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Joseph Remigio | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiff:      Attorneys Present for Defendants:

Not Present      Not Present

**Proceedings:** (IN CHAMBERS) Order Re: The FTC's Motion for Summary Judgment [75]; Defendant Roy Ferman's Motion for Partial Summary Judgment [92]

## I. INTRODUCTION

On November 4, 2024, the Federal Trade Commission (the "FTC") filed a Complaint against Seek Capital, LLC, a Delaware limited liability company, Seek Capital, LLC, a California limited liability company (both entities collectively, "Seek"), and the entities' CEO, Roy Ferman (collectively, "Defendants"). The FTC asserts claims for violations of Section 5(a) of the FTC Act ("FTCA"), the Telemarketing Sales Rule ("TSR"), and the Consumer Review Fairness Act ("CRFA"). (ECF No. 1.)

On January 17, 2025, the FTC filed a Motion for a Preliminary Injunction, requesting the Court enjoin Defendants from certain prohibited conduct. (ECF No. 30.) On February 20, 2025, the Court granted and ordered the preliminary injunction. (ECF No. 50.)

Presently before the Court are two motions: the FTC's Motion for Summary Judgment (ECF. No. 75) and Ferman's Motion for Partial Summary Judgment (ECF No. 92). For the following reasons, the Court **GRANTS in part** the FTC's Motion and **DENIES** Ferman's Motion.

## II. FACTUAL BACKGROUND

The following facts are uncontroverted[1] unless otherwise stated:

Ferman is the founder, CEO, and board member of Seek, a business funding matching company that has marketed its services to new and aspiring small business owners. (The FTC's Resp. to Statement of Genuine Disputes of Material Fact ("FTC RSF"), ¶ 5, ECF No. 99-1; Compl. ¶ 2; Answer ¶ 14, ECF

---

[1] Defendants make numerous objections to the evidence presented in opposition to the FTC's Motion. To the extent the Court relies upon evidence to which Defendants have objected, the objections are **OVERRULED**. To the extent the Court does not rely upon evidence to which Defendants have objected, the objections are **DENIED** as moot.

NO JS6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-09511-RGK | Date | September 16, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Seek Capital, LLC et al.* | | |

No. 24; Ferman Decl., ¶¶ 4, 13, ECF No. 91-3 ("Ferman Decl.").) Although Seek technically encompasses two corporate entities, Seek functions and Defendants treat it as one. (FTC RSF ¶¶ 12–13.)

As Seek's founder and CEO, Ferman has participated in and has authority over Seek's business operations, including signing corporate formation documents, corporate bank accounts, and third-party contracts as well as serving as the primary contact for Seek's lead generators, payment processors, and domain registrars and hiring and firing Seek personnel. (*Id.* ¶¶ 5–8, 9, 10, 14–15, 16, 21, 24–31.) Ferman has also been involved in Seek's business with respect to its marketing strategy, lender communications, and reviewing and responding to consumer complaints concerning Seek's business. (*Id.* ¶¶ 27, 28, 32, 34–35, 50–51, 115, 138.)

Defendants have marketed their purported services to consumers through internet advertisements, Seek's website, third-party websites, emails to consumers, and telemarketing. (*See, e.g., id.* ¶¶ 41, 47, 54, 60, 64.) Within these marketing efforts, Defendants have made several types of representations concerning their business, including that (1) they would secure business loans or lines of credit for customers (*id.* ¶¶ 42–43, 45, 49–52 54, 57, 61, 64–66, 68–69); (2) Seek had a relationship with lenders that provided Seek customers benefits unavailable to the public (*id.* ¶¶ 102–107); (3) they would secure credit cards with line of credit capabilities (*id.* ¶¶ 133–134, 136); (4) they would secure specific financing terms, such as zero percent annual percentage rate ("APR") for a specified time (*id.* ¶¶ 143–46); (5) Seek would not charge fees until funding was approved (*id.* ¶¶ 152–53, 155, 158, 159); (6) Seek's services would not harm customers' credits scores (*id.* ¶¶ 57, 168–69, 174); and (7) Seek received overwhelmingly positive customer reviews (*see id.* ¶¶ 182–83).

Seek's business services involved applying exclusively for credit cards with lenders on behalf of its customers. (*Id.* ¶¶ 38, 93.) If consumers were interested in Seek's services, Seek's telemarketers would call and send them a "Funding Estimate Agreement" ("FEA"), which outlined the business terms, including fees. (*Id.* ¶ 78; Ferman Decl. ¶ 28.) Soon after the FEA was signed, Seek would have consumers sign a notarized Limited Powers of Attorney, which gave Seek the authority to submit credit and loan facilities on a consumer's behalf. (FTC RSF ¶ 88.) After those agreements were signed, Seek would conduct a verification call with customers to gather further information about their funding needs. (*Id.* ¶ 89.) During or after this call, Seek would send customers a pre-filled form contract, the "Verification and Compliance Questionnaire" ("VCQ"), for their signature. (*Id.* ¶ 90.) Since at least November 4, 2021, the VCQ has contained a clause prohibiting customers from posting online any negative comments, reviews, or complaints about Seek for three years. (*Id.* ¶ 217.) After the VCQ was signed, Seek would submit the credit card applications to lenders. (*Id.* ¶ 94.)

When applying for credit cards for customers, Seek has secured more credit than the maximum funding amount a customer had explicitly approved. (*Id.* ¶¶ 205, 207.) Additionally, Seek would acquire credit cards with varying financing terms, some with and without a zero percent APR. (*Id.* ¶ 147;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-09511-RGK | Date | September 16, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Seek Capital, LLC et al.* | | |

Ferman Decl. ¶¶ 15–16.) During the credit card application process, "hard" credit inquiries were conducted to check Seek's customers' credit scores. (FTC RSF ¶ 175.)

Defendants have received negative feedback from customers and lenders alike. For example, Defendants have received and prepared responses to consumer complaints concerning Seek's business practices. (*See id.* ¶¶ 34–35, 39.) More specifically, Defendants have received feedback from some customers that they were surprised and "unhappy" to learn their funding would be provided with credit cards. (*Id.* ¶ 96.) Additionally, Defendants have received cease-and-desist letters from banks concerning Defendants' credit card application practices. (*Id.* ¶¶ 113–16.)

Over the course of business operations, Defendants have charged customers several fees, including funding fees (based on a percentage of the credit card limits Seek secured), application fees, same-day funding fees (for optional expediting application services), and bank negotiation fees (for optional bank negotiation services). (*Id.* ¶¶ 198, 201–02, 220, 229, 230.) Additionally, Defendants have charged customers early termination fees when they have canceled services after signing the FEA and before receiving funding. (*Id.* ¶ 160.) In total, these fees have resulted in customers paying Seek $48,280,328.57, after subtracting credits, refunds, or disputes. (*Id.* ¶ 231.)

## III. JUDICIAL STANDARD

### A. Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56(a), a court may grant summary judgment only if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To prevail on a summary judgment motion, the movant must show that there are no genuine issues of material fact as to matters on which it has the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Upon such a showing, the Court may grant summary judgment on all or part of the claim. Fed. R. Civ. P. 56(a).

To defeat a summary judgment motion, the non-moving party may not merely rely on its pleadings or on conclusory statements. *See Celotex*, 477 U.S. at 324. Nor may the non-moving party merely attack or discredit the moving party's evidence. *Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 96–97 (9th Cir. 1983). The non-moving party must affirmatively present specific evidence sufficient to create a genuine issue of material fact for trial. *See Celotex*, 477 U.S. at 324. The materiality of a fact is determined by whether it might influence the outcome of the case based on the contours of the underlying substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over such facts amount to genuine issues if a reasonable jury could resolve them in favor of the nonmoving party. *Id.*

NO JS6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-09511-RGK | Date | September 16, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Seek Capital, LLC et al.* | | |

The Court first addresses the FTC's Motion for Summary Judgment before considering Ferman's Motion for Partial Summary Judgment

### IV. THE FTC'S MOTION FOR SUMMARY JUDGMENT

#### A. Discussion

The FTC moves for summary judgment, seeking judgment that: (1) Defendants' misrepresentations violated the FTCA and TSR; (2) Defendants' unauthorized and deceptive billing practices violated the FTCA; (3) Defendants' form contract violated the CRFA; (4) Defendants are liable as a common enterprise; (5) Defendants' affirmative defenses fail; and (6) Defendants are liable for injunctive and monetary relief. The Court addresses each argument in turn.

##### 1. *Misrepresentations*

Section 5 of the FTCA prohibits "unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(1). Similarly, the FTC enacted the TSR because of a directive from Congress to "prescribe rules prohibiting deceptive telemarketing acts or practices and other abusive telemarketing acts or practices." 15 U.S.C. § 6102(a)(1). Any violation of the TSR constitutes an unfair and deceptive act or practice in violation of Section 5 of the FTC Act. 15 U.S.C. § 57a(d)(3), § 6102(b), (c).

Under the FTCA, a representation is considered deceptive if it is (1) likely to mislead consumers acting reasonably under the circumstances, and (2) material. *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1095 (9th Cir. 1994). In assessing whether a representation or practice is likely to mislead consumers, a court may consider the overall "net impression" conveyed by the representation. *FTC v. Cyberspace.Com, LLC*, 453 F.3d 1196, 1200 (9th Cir. 2006) ("A solicitation may be likely to mislead by virtue of the net impression it creates even though the solicitation also contains truthful disclosures."). Evidence of past deception is "highly probative to show that a practice is likely to mislead consumers acting reasonably under the circumstances." *Id.* at 1201.

Similarly, the TSR prohibits telemarketing practices that include misrepresentations as to material information, like "[a]ny material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer . . . ." 16 C.F.R. § 310.3(a)(2)(iii)

Here, the FTC asserts Defendants misrepresent that: (1) they procure loans or lines of credit for customers when they actually obtain credit cards; (2) they have relationships with lenders; (3) they offer credit cards with "line of credit capability"; (4) they offer specific favorable financing terms, like zero percent APR; (5) they charge no fees until their customer receives funding; (6) using their services will not harm their customers' credit scores; and (7) their business reviews are positive. Defendants do not

NO JS6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-09511-RGK | Date | September 16, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Seek Capital, LLC et al.* | | |

dispute making these representations. Nor do they dispute that these statements are material. Indeed, express claims about the nature of a defendant's services are presumed material. *See Pantron I Corp.*, 33 F.3d at 1095–96. Instead, they dispute only whether the representations were false and misleading. The Court analyzes each representation in turn.

        a.    *Business Loans and Lines of Credit*

The FTC asserts that Defendants represent through advertisements, Defendants' website, representations on third-party websites, emails to consumers, and telemarketing calls that they procure loans or lines of credit when, in practice, they only secure credit cards. Defendants concede such representations were made, including claims like "Need a Business Startup Loan?" and confirming consumers can obtain funding through "the line of credit route." (*See, e.g.*, FTC RSF ¶ 43, 65.)

The FTC argues that these representations are false and misleading given that Defendants solely apply for credit cards for customers, not loans or lines of credit, and many of these representations do not specifically reference credit cards. Defendants do not dispute that they only procure credit cards for customers. Instead, Defendants argue that these representations are truthful because credit cards are technically lines of credit and are classified as revolving loans. Looking to the net impressions of these representations, the Court finds that there is a genuine dispute of material fact as to whether these representations concerning loans and lines of credit are misleading.

The FTC has pointed to persuasive evidence that indicates that these representations could be misleading. For instance, when Defendants have explicitly referenced credit cards in their business offerings, the references were alongside offers for loans and lines of credit, which may mislead consumers to believe that the loans or lines of credit were in addition to, rather than were themselves, the credit cards. (*See, e.g.*, Limited Power of Attorney, Ex. E at ¶ 1, ECF No. 91-8 ("pursuit and acquisition of credit and loan facilities (credit and loan facilities will consist of one or more of the following: business and personal credit cards, bank lines of credit and bank loans) . . . .") Additionally, Ferman agreed with a third party that Defendants representing that they could secure "loans" in advertising copy was "misleading." (FTC RSF ¶ 97.) In fact, Seek's clients have confirmed they were surprised and "unhappy" that the funding Seek had advertised about would be provided through credit cards. (*Id.* ¶ 96.) *See F.T.C. v. Cyberspace.Com LLC*, 453 F.3d 1196, 1201 (9th Cir. 2006) (noting that evidence that representations deceived consumers "is highly probative to show that a practice is likely to mislead consumers acting reasonably under the circumstances").

However, as Defendants argued in their Opposition, courts in the Ninth Circuit have considered credit cards to be lines of credit and are classified as revolving loan account arrangements. *See Ward v. Costco Wholesale Corp.*, 2009 WL 10670191, at *1 (C.D. Cal. May 6, 2009) (noting the outstanding balance on a credit card is a line of credit); *F.T.C. v. Am. Standard Credit Sys., Inc.*, 874 F. Supp. 1080, 1085 (C.D. Cal. 1994) (referencing "credit card" synonymously with a "line of credit"); *Hernandez v.*

NO JS6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-09511-RGK | Date | September 16, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Seek Capital, LLC et al.* | | |

*Experian Info. Sols., Inc.*, 2021 WL 2325019, at *3 (C.D. Cal. June 4, 2021), *rev'd and remanded*, 2022 WL 1315306 (9th Cir. May 3, 2022) ("for revolving loans like credit cards"); *Du-Phillips v. Citibank, N.A.*, No. CV 25-00034 JAO-RT, 2025 WL 1615329, at *6 (D. Haw. June 5, 2025) (noting that a credit card is a "revolving loan account arrangement"); *but see Wisdom v. Wells Fargo Bank NA*, 2012 WL 170900, at *1 (D. Ariz. Jan. 20, 2012) (differentiating between a plaintiff's personal credit card and a line of credit on his home). This precedential understanding that credit cards are a type of line of credit and are classified as revolving loans introduces a dispute of fact that could be reasonably resolved in the Defendants' favor. Thus, the Court finds that a genuine dispute of material fact exists as to whether Defendants' representations concerning loans and lines of credit are misleading.

          b.    *Relationships with Lenders*

The FTC contends that Defendants misrepresent Seek's relationships with lenders. It is undisputed that Defendants have claimed in sales pitches to consumers that Seek has "special" and "direct relationships" with lenders and banks, that they "do not accept a single penny" from their lending partners, and that Seek can provide consumers with access to publicly unavailable programs. (FTC RSF ¶¶ 102–05, 108.) The parties dispute the veracity of these representations.

The FTC argues that these representations are false and misleading, noting that, in actuality, banks have sent Seek cease-and-desist letters, admonishing its business practices, and have automatically declined credit card applications connected with Defendants. (*Id.* ¶¶ 113–16, 126.) Additionally, Defendants have admitted that they do not have relationships with lenders that benefit consumers, and that their only agreements with banks are to compensate Seek in exchange for matching and referring customers. (*Id.* ¶ 109.)

In their Opposition, Defendants offer no argument to contest the FTC's assertions but rather dispute ancillary facts to this issue. However, the record is clear that Defendants in fact did not have relationships with lenders that would provide consumers any sort of unique benefit as they had represented. Additionally, Defendants accepted compensation from lenders, which directly conflicts with their marketing representations. The Court agrees with the FTC that these false claims were likely to deceive consumers looking to benefit from Seek's purported relationships with lenders. Thus, these representations are misleading and violate the FTCA and TSR.

          c.    *Line of Credit Capability*

Next, the FTC asserts that when Defendants told consumers their services involve procuring credit cards, they misrepresented that the cards have "line of credit capabilities," which Defendants do not dispute. (*Id.* ¶¶ 129. 131–32.) The FTC further asserts that in actual practice, Defendants do not obtain credit cards with line of credit capabilities, like providing access to cash, which again Defendants

Case 2:24-cv-09511-RGK-MAA    Document 137    Filed 09/16/25    Page 7 of 19    Page ID #:11226

NO JS6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-09511-RGK | Date | September 16, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Seek Capital, LLC et al.* | | |

do not dispute. (*See, e.g., id.* ¶ 142 (citing Munoz Decl., Attach. D ¶ 11, ECF No 8-3 ("Neither credit card provided [my] business with a revolving line of credit allowing access to cash as promised.")).)

Defendants do dispute that this representation is misleading. Defendants argue that advertising their credit cards "with line of credit capability" is not a misrepresentation but rather a descriptive add on to describe a method in which the credit card could be used. Defendants claim that when paired with Seek's services, their offered credit cards have adopted characteristics of other types of lines of credit.

However, as this Court has noted previously, the fact that *some* credit cards have that feature does not make Defendants' indiscriminate use of the term "credit cards with line of credit capability" nondeceptive. (ECF No. 50.) The undisputed record shows that consumers have been unable to use the Seek-procured credit cards as another type of line of credit, like liquidating them for cash access, beyond the features of a standard credit card. (FTC RSF ¶ 141.) It is clear to the Court that representations that a credit card has line of credit capabilities would mislead a reasonable consumer to believe that the credit card would have additional capabilities than those traditional to that funding source. Thus, there is no genuine dispute that these misrepresentations are misleading.

        d.    *Financing Terms*

The FTC asserts that Defendants have represented that Seek offers consumers a zero percent APR financing term, claiming there will be "no interest repayments for the first 12 months" and "0% interest for first 12-18 months." (*Id.* ¶¶ 143–45.) Despite these representations to consumers, Defendants have secured credit cards without such financing terms. For example, for one consumer, Defendants secured at least ten credit cards, many of which did not have a twelve-month zero percent APR. (*Id.* ¶ 148.)

Defendants have admitted that they have secured credit cards without a zero percent APR. (*Id.* ¶ 147.) However, they argue that the financing terms were truthful and not misleading because for the credit cards secured at a non-zero percent rate, Defendants intended to merge those cards with zero percent APR credit cards. Defendants assert that clients were informed of this funding strategy and were told not to use the non-zero percent APR credit cards, and thus the net impression of the representations regarding the financing terms was truthful. The Court disagrees.

Subsequent disclosures do not necessarily cure an initial deception. *FTC v. Resort Car Rental Sys.*, 518 F.2d 962, 964 (9th Cir. 1975). The FTCA "is violated if [the defendant] induces the first contact through deception, even if the buyer later becomes fully informed before entering the contract." *Id.* Thus, even if Defendants did clarify with customers after Seek applied for credit cards on their behalf that some were non-zero percent APR credit cards, this subsequent disclosure does not cure the initial misleading representation. Defendants fail to address that falsely advertising specific financing terms is misleading to a reasonable consumer. Considering the net impressions of such representations along

NO JS6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-09511-RGK | Date | September 16, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Seek Capital, LLC et al.* | | |

with the subsequent disclosures, the Court finds that there is no genuine dispute that these representations were false and misleading, in violation of the FTCA and TSR.

        e.    *No Fees Until Funding*

Next, the FTC contends that Defendants have claimed to consumers that Seek does not charge "upfront fees," its fees are results-based, and no costs are incurred until funding is approved. (FTC RSF ¶¶ 152–53, 155.) The FTC argues that these claims are false, offering evidence that Defendants would actually charge consumers early termination fees before they were approved for the promised funding if consumers cancelled the transaction after the FEA was signed.

Defendants do not dispute that they made such representations or that Seek has charged customers an early termination fee, which is non-contingent on funding approval or any other result. Defendants argue that the early termination fee has been disclosed multiple times to customers in writing and over the phone, including within the FEA in red font (which stands out against the all-black type page). Defendants also argue that clients have the right to rescind the early termination fee during a verification call with Seek personnel, and thus these representations are not misleading. The Court is not convinced.

The undisputed fact remains that Defendants represented to consumers that Seek did not charge any upfront fees and that its fees were results driven, but then did charge consumers a fee without customers receiving funding approval or any other result. Moreover, the FTC has presented undisputed evidence that Defendants' customers have been rushed to sign the FEA and were told they did not need to read it. (*Id.* ¶¶ 84, 86.) As a result, the misrepresentation is not cured by the FEA disclosure. *See FTC v. Am. Fin. Benefits Ctr.*, 2018 WL 11354861, at *9–10 (N.D. Cal. Nov. 29, 2018) (misrepresentations not cured by disclosures in contracts consumers were rushed to e-sign at the end of sales calls); *see also FTC v. Gill*, 71 F. Supp. 2d 1030, 1044 (C.D. Cal. 1999) (disclaimer in contract that "consumers eventually sign" is insufficient where it "is not included in the representations"). Accordingly, the Court finds that there is no genuine dispute of material fact that the misrepresentations about charging no fees until funding violated the FTCA and TSR.

        f.    *Credit Score Impact*

The FTC posits that Defendants falsely represented to consumers that their applications only involve "soft pull" credit inquiries and will not harm customers' credit scores, but, in fact, they knew that the applications involved "hard" credit inquiries. (RSF ¶ 175.) Defendants do not dispute this evidence, and they admit that "hard inquiries" can lower consumers' credit scores. (*See* Def.'s Opp. at 10–11, ECF No. 91.)

NO JS6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-09511-RGK | Date | September 16, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Seek Capital, LLC et al.* | | |

Instead, Defendants argue that these representations concern only the initial preapproval application, at which point Seek performs "soft credit pulls" that do not impact credit scores. Defendants argue that after a consumer was deemed qualified based on these "soft" credit checks, Seek would explain to the consumer that the lender would perform a "hard" credit inquiry in the next step of the application.

However, Defendants fail to reconcile that a reasonable consumer would not know that Defendants' sales representations referred only to one part of the application process. Indeed, the representations appear to concern the entire application process, not one part. For example, Ferman drafted language for Seek's webpage stating that Seek obtains funding for customers with "no hard credit pulls!" (FTC RSF ¶ 168.) Thus, the Court finds there is no genuine dispute of material fact that such representations are likely to mislead a reasonable consumer to believe there would be no "hard" credit inquiries involved with Defendants' services.

g. *Customer Reviews*

Finally, the FTC asserts that Defendants have made representations that they receive overwhelmingly positive customer reviews, including "4.9/5 Stars," and "98% recommend." (FTC RSF ¶ 182.) The FTC purports that the reviews do not actually reflect consumer experience because consumers (1) are barred from posting negative reviews for three years by the Defendants' VCQ; and (2) have been pressured by telemarketers into leaving positive reviews to continue through the approval process.

Defendants do not dispute that they made such representations, nor do they dispute that the VCQ contains such a clause barring negative feedback. Although Defendants dispute whether telemarketers were trained to pressure consumers to leave positive reviews, they do not dispute whether telemarketers did so in practice. Instead, Defendants argue that these representations are true because Seek *does* have overwhelmingly positive reviews, citing to Ferman's declaration discussing how the reviews appeared authentic for support.[2] Given these potentially authentic positive reviews, Defendants argue there is a genuine dispute of material fact that their representations were accurate. The Court agrees.

The record does not demonstrate that most of the reviews are fake to the extent necessary to render Defendants' representations undisputably false or misleading. Although there is no dispute that Seek consumers are contractually barred from posting negative reviews for three years, the FTC failed to

---

[2] The FTC argues that Ferman's declaration is self-serving and thus should be disregarded. Although in parts of the declaration that may be true, here, Ferman's statements about his analysis of the customer reviews are supported by some facts. Thus, the Court finds them sufficient to create a genuine issue of material fact. *See FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.").

NO JS6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-09511-RGK | Date | September 16, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Seek Capital, LLC et al.* | | |

establish that there is no genuine dispute that negative reviews would have existed to render Defendants' claims misleading.

In sum, the Court **GRANTS** the FTC's Motion for Summary Judgment of violations of the FTCA and TSR as to misrepresentations about relationships with lenders, line of credit capabilities, financing terms, no fees until funding, and credit score impact. The Court **DENIES** the FTC's Motion for Summary Judgment of FTCA and TSR violations as to all other grounds for misrepresentation.

2. *Deceptive Billing Practices*

The FTC also asserts that Defendants' billing practices violated the FTCA. A practice is unfair under the FTCA where it "causes or is likely to cause substantial injury to consumers [that] is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." 15 U.S.C. § 45(n). Additionally, as the Court outlined above, a practice is deceptive "(1) if it is likely to mislead consumers acting reasonably under the circumstances (2) in a way that is material." *Cyberspace.Com, LLC*, 453 F.3d at 1199.

It is well settled that billing customers for unauthorized charges causes substantial injury. *See FTC v. Amazon.com, Inc.*, 2016 WL 10654030, at *8 (W.D. Wash. July 22, 2016) (collecting cases). Consumers cannot avoid injury if they do not have a reason to anticipate impending harm and the means to avoid it. *See also FTC v. Neovi, Inc.*, 604 F.3d 1150, 1158 (9th Cir. 2010).

Here, the FTC asserts that Defendants have had three deceptive billing practices: (1) inflating fees; (2) charging early termination fees; and (3) charging fees without providing the related service. First, the FTC has presented evidence that Defendants inflate their fees by securing more credit than their customers want. For example, a consumer requested Defendants secure $40,000 in funding so that he could purchase a trailer for his trucking company. (FTC RSF ¶ 208.) Defendants told him that they could secure $50,000 to $60,000 and ultimately sent him an invoice indicating that they had secured more than $60,000 in credit. (*Id.*) Defendant have admitted that they have a practice of obtaining about "115% of Funding Proposal offered to client and in contract" when securing "actual funding." (*Id.* ¶ 207.) The FTC argues that since Defendants charge fees based on the percentage of the credit secured, Defendants have unfairly inflated their fees without customer authorization by securing higher limits. Defendants do not contest that they have inflated their fees in such a manner. Instead, they justify this billing practice by arguing that they received customer approval via the signed FEA, which permits Defendants to secure up to twenty percent above the maximum approved funding. (Ferman Decl. ¶¶ 31, 39; FEA, Ex. D, ECF No. 91-7.)

The Court finds the record to be unclear about whether this disclosure in the FEA is sufficient to inform consumers that they agree to potentially twenty percent more funding, and thus a larger service fee to Seek, when signing the contract. Additionally, there is a genuine dispute as to whether a higher

NO JS6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-09511-RGK | Date | September 16, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Seek Capital, LLC et al.* | | |

credit limit, which is what the inflated fee is based on, benefits consumers by providing them access to additional funding, thus potentially outweighing the costs of the related fees. Thus, the FTC fails to establish that there is no genuine dispute as to whether this billing practice is unfair or deceptive.

Second, the FTC claims that Defendants' early termination fees are an unfair billing practice. In their Opposition, Defendants proffer a similar argument as they did for the fee inflation billing practice, noting how the fee was disclosed verbally and in writing, including in the FEA. (Ferman Decl. ¶¶ 31, 37; FEA, Ex. D.) Whereas the record is unclear as to the inflated fees, there does not seem to be a genuine dispute that the early termination fee is a deceptive billing practice in light of Defendants' marketing representations concerning their fees. *See supra* Section IV.A.1.e. As the Court explained above, Defendants' representations that they charge no fees until funding is approved has been likely misleading to consumers given that Defendants have charged customers the early termination fee prior to funding approval. Defendants argue that this practice was not deceptive because, along with other arguments already addressed above, customers could request to rescind this early termination fee. However, spending the time to make such a request is another type of harm caused by this billing practice. *See F.T.C. v. Neovi, Inc.*, 598 F. Supp. 2d 1104, 1115 (S.D. Cal. 2008) (noting that "harm need not be monetary to qualify as injury" and finding that time consumers spent contesting unauthorized checks and "attempting to get their money back" contributed to substantial injury). Thus, there appears to be no genuine dispute of material fact that the early termination fee is a deceptive billing practice.

Finally, the FTC asserts that Defendants have charged consumers that opted for additional services fees without providing the related services. As one example, the FTC posits that Defendants charged consumers same-day funding fees to expedite their applications, but then processed the applications in the order they were received. (FTC RSF ¶ 201.) Defendants dispute this fact, declaring that if a client paid for the same day funding fee, Seek would expedite the application and would not place it in the regular queue. Given the conflicting deposition testimonies concerning this issue, there appears to be a genuine dispute about whether Defendants provided the same-day service. *See Anderson*, 477 U.S. at 249–50 (noting that the weight of evidence is not for the court to decide on motion for summary judgment).

As another example, the FTC claims that Defendants have charged customers a fee for bank negotiation services while requiring customers to still do the work. Defendants do not dispute that Defendants hid their involvement from numerous banks and instructed customers who requested bank negotiation services to speak with the bank themselves and not mention Seek. (FTC RSF ¶ 204.) Thus, it appears that there is no genuine dispute that consumers were charged a fee without receiving the benefit of the requested service, and the cost-benefit prong of the unfairness test is easily satisfied. *See FTC v. J.K. Publ'ns, Inc.*, 99 F. Supp. 2d 1176, 1201 (C.D. Cal. 2000).

Accordingly, the Court **GRANTS** the FTC's Motion for Summary Judgment of FTCA violations as to Defendants' unfair and deceptive billing practices related to its early termination fees and charging

NO JS6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:24-cv-09511-RGK | Date | September 16, 2025 |
| Title | *Federal Trade Commission v. Seek Capital, LLC et al.* | | |

for certain services not provided. The Court **DENIES** the FTC's Motion for Summary Judgment of FTCA violations as to all other alleged unfair and deceptive billing practices.

        3.    *Form Contract*

The CRFA prohibits offering a form contract that prohibits or restricts the ability of consumers to leave reviews. 15 U.S.C. § 45b (b), (c). Here, the FTC has provided evidence that Defendants' form contract, the VCQ, contains a provision barring consumers from posting negative online reviews about Defendants for three years. (FTC RSF ¶ 188.) Defendants do not dispute any material fact concerning this violation.

Accordingly, the Court finds there is no genuine dispute of material fact that Defendants violated the CRFA and the Court **GRANTS** the FTC's Motion.

        4.    *Common Enterprise Liability*

The FTC moves to establish that Seek has acted as a common enterprise. "Where one or more corporate entities operate in common enterprise, each may be held liable for the deceptive acts and practices of the others." *FTC v. John Beck Amazing Profits, LLC*, 865 F. Supp. 2d 1052, 1082 (C.D. Cal. 2012). When determining common enterprise liability, courts look to four factors: "(1) common control; (2) sharing office space and offices; (3) whether business is transacted through a 'maze of interrelated companies'; and (4) commingling of funds." *Id.*

Here, the FTC asserts that both corporate entities were controlled by Ferman, shared the same location, and functioned as one entity. (FTC RSF ¶¶ 5, 12–13.) Defendants do not dispute these facts nor that common enterprise liability exists. Thus, the Court finds that no fact issues exists as to whether Seek acted as a common enterprise, and **GRANTS** the FTC's Motion.

        5.    *Affirmative Defenses*

The FTC moves for summary judgment on all twenty of Defendants' affirmative defenses, arguing that they are either (1) improper negative defenses, (2) entirely unsupported, or (3) irrelevant. Defendants do not oppose. The Court considers the affirmative defenses in the groupings the FTC challenges them in.

        a.    *Improper Negative Defenses*

The FTC asserts that Defendants' first (failure to state a claim), second (deficient pleading), third (no irreparable injury), fourth (no fraudulent or deceptive business practice), sixth (no misrepresentations), seventh (advertising not false and deceptive), thirteenth (no reason to believe), nineteenth (no reliance), and twentieth (no individual liability) defenses are improper negative defenses,

NO JS6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-09511-RGK | Date | September 16, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Seek Capital, LLC et al.* | | |

restating denials of liability or elements of claims, and should therefore be rejected as a matter of law. The Court agrees.

Affirmative defenses absolve defendants of liability, even in cases where "plaintiffs have stated a prima facie case for recovery." *Quintana v. Baca*, 233 F.R.D. 562, 564 (C.D.Cal.2005). "An attack on a plaintiff's case-in-chief is not an affirmative defense." *Vogel v. Huntington Oaks Delaware Partners, LLC*, 291 F.R.D. 438, 442 (C.D. Cal. 2013) (citing *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir.2002)). Defenses concerning a plaintiff's "failure to state a claim is not an affirmative defense; it is a defect in a plaintiff's claim." *Vogel*, 291 F.R.D. at 442.

Indeed, Defendants' first, second, third, fourth, sixth, seventh, thirteenth, nineteenth, and twentieth defenses all argue how the FTC failed to allege facts sufficient to establish its claims and/or the requested relief. However, asserting defects in the FTC's prima facie case are not affirmative defenses. *See Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1174 (N.D. Cal. 2010). Moreover, asserting factual disagreements with the merits of the FTC's case, like how the sixth affirmative defense argues that there were no misrepresentations, are not the proper subjects of affirmative defenses. *See Fed. Trade Comm'n v. N. Am. Mktg. & Assocs., LLC*, 2012 WL 5034967, at *2 (D. Ariz. Oct. 18, 2012) (holding a defendant's "affirmative defense is a factual disagreement with the merits of Plaintiff's case and not the proper subject of an affirmative defense"). Thus, these affirmative defenses fail as a matter of law.

          b.    *Entirely Unsupported*

Next, the FTC asserts that Defendants admitted there are no facts supporting the following seven affirmative defenses: Defendants' eighth (laches), ninth (statute of limitations), tenth (mootness/res judicata/collateral estoppel), eleventh (waiver/estoppel/consent), twelfth (due process, excessive fines, and commerce clause; first amendment), fifteenth (third parties), and eighteenth (unclean hands) defenses. The FTC argues that this is reason alone to reject the affirmative defenses.

The Court agrees that there is no genuine dispute of material fact that Defendants admitted that there are no facts supporting the eighth, tenth, eleventh, twelfth, fifteenth, and eighteenth defenses, and thus they fail to give sufficient notice concerning the bases for these defenses. *See Desert European Motorcars, LTD v. Desert European Motorcars, Inc.*, 2011 WL 3809933, at *2–4 (C.D.Cal. Aug.25, 2011) (granting a motion to strike affirmative defenses of estoppel, waiver, and laches for failure to state any facts that provide fair notice); *see also N. Am. Mktg. & Assocs., LLC*, 2012 WL 5034967 at *3–5 (striking affirmative defenses of estoppel, waiver, laches, unclean hands, statute of limitations, and damages were caused by third parties because defendants failed to reference supporting facts and thus there was no notice concerning the bases of the defenses).

Case 2:24-cv-09511-RGK-MAA   Document 137   Filed 09/16/25   Page 14 of 19   Page ID #:11233

NO JS6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-09511-RGK | Date | September 16, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Seek Capital, LLC et al.* | | |

As for the ninth affirmative defense concerning statute of limitations, Defendants admit that they have no facts to support this affirmative defense as to the FTC's claims limited to November 4, 2021 through present, but that there is a dispute regarding claims based on acts earlier than that time period. Defendants argue that 15 U.S.C. § 57b(d) bars the FTC from bringing actions more than three years after the rule was violated. However, Section 13(b) of the FTCA, which provides the FTC the authority to bring a suit to enjoin any person or entity violating any law enforced by the FTC, does not specify any limitations period. *See* 15 U.S.C. § 53(b). Thus, Defendants have failed to identify any applicable limitations period to support this affirmative defense. *See F.T.C. v. Ivy Cap., Inc.*, 2011 WL 2470584, at *2 (D. Nev. June 20, 2011) ("A defendant may not assert a statute of limitations defense against the United States government unless the statute in question contains an express limitations period."). Accordingly, there is no genuine dispute of material fact that these affirmative defenses fail.

   c. *Entirely Unsupported*

Finally, the FTC contends that the four remaining affirmative defenses are irrelevant and thus fail. For their fifth affirmative defense, Defendants argue that the FTC is barred from recovering any relief because Defendants had a reasonable basis for their actions and they acted in good faith. The FTC argues this defense fails because good faith is not a defense to the relief sought. While the FTC is correct that "good faith is not a defense to liability under the FTC Act," this defense may be relevant in determining the scope of injunctive relief "because permanent injunctions are only appropriate if 'there exists some cognizable danger of recurrent violation.'" *FTC v. LoanPointe, LLC*, 2011 WL 4348304, at *9 (D. Utah Sept. 16, 2011) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953)); *see also Fed. Trade Comm'n v. Vemma Nutrition Co.*, 2016 WL 3548762, at *2 (D. Ariz. June 30, 2016) ("Because the FTC seeks a permanent injunction in this case, good faith is to that extent a valid affirmative defense."). Because the FTC seeks a permanent injunction in this case, good faith is a valid affirmative defense as to the scope of injunctive relief.

For the remaining affirmative defenses, the FTC asserts that the fourteenth (failure to mitigate), sixteenth (voluntary exposure/appreciation of risk), and seventeenth (comparative negligence) are not appropriate because the defenses reference consumers impacted by the conduct at issue and the FTC brings this suit in its own name. The Court agrees that these are not valid affirmative defenses given that "relief under the FTC Act is equitable and dependent on the amount of gain by Defendants, not loss by consumers." *Fed. Trade Comm'n v. Vemma Nutrition Co.*, 2016 WL 3548762, at *2 (D. Ariz. June 30, 2016).

In sum, the Court **GRANTS** the FTC's Motion for Summary Judgment of all affirmative defenses except for the fifth affirmative defense as it relates to damages. The Court **DENIES** the FTC's Motion as to the fifth affirmative defense relating to damages.

   6. *Injunctive and Monetary Relief*

NO JS6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-09511-RGK | Date | September 16, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Seek Capital, LLC et al.* | | |

The FTC moves for summary judgment on two aspects of its requested relief. First, the FTC asserts that Ferman is individually liable for injunctive and monetary relief. Second, the FTC contends that the requested scope of relief is accurate and should be ordered. The Court considers each argument in turn.

      a.    *Ferman's Individual Liability*

Individual liability for injunctive relief exists where "(1) the corporation committed misrepresentations of a kind usually relied on by a reasonably prudent person and resulted in consumer injury, and (2) individuals participated directly in the violations or had authority to control the entities." *FTC v. Grant Connect, LLC*, 763 F.3d 1094, 1101 (9th Cir. 2014) (citing *Publ'g Clearing House, Inc.*, 104 F.3d at 1170–71).

For monetary relief, individual liability exists where the individual "had knowledge that the corporation or one of its agents engaged in dishonest or fraudulent conduct, that the misrepresentations were the type upon which a reasonable and prudent person would rely, and that consumer injury resulted." *Id.* at 1101 (quoting *Publ'g Clearing House, Inc.*, 104 F.3d at 1171). To satisfy the knowledge requirement, the FTC must establish that defendants "had actual knowledge of material misrepresentations, [were] recklessly indifferent to the truth or falsity of a misrepresentation, or had an awareness of a high probability of fraud along with an intentional avoidance of the truth." *Id.* at 1101-02 (citing *FTC v. Am. Standard Credit Sys., Inc.*, 874 F.Supp. 1080, 1089 (C.D.Cal.1994). The FTC does not need to show that a defendant intended to defraud consumers, but rather that "the individual's involvement in a fraudulent scheme alone is sufficient to establish the requisite knowledge for personal restitutionary liability." *Id.* at 1102 (quoting *FTC v. Affordable Media*, 179 F.3d 1228, 1235 (9th Cir.1999)).

Here, the FTC asserts that Ferman is personally liable for both injunctive and monetary relief. The Court agrees. First, for injunctive relief liability, the record is clear that Seek made misleading misrepresentations that resulted in consumer injury. *See supra* Section IV.A.1. Additionally, the FTC contends Ferman participated directly in the violations and had authority to control the entities. As the Court mentioned above, the undisputed record shows that Ferman made some of the misrepresentations that violated the FTCA. (*See, e.g.*, FTC RSF ¶ 168.) Additionally, as founder and CEO, Ferman has controlled Seek's business, evident in that he was the signatory for significant business documents, including the corporate formation documents, bank accounts, and third-party contracts. Ferman also served as the primary contact for Seek's lead generator and payment processors, which relate to some of the business practices at issue. Defendants do not dispute these facts.

Second, for monetary relief, the FTC asserts that Ferman had the requisite knowledge of wrongdoing, citing to Ferman arranging the operation, organizing the entities, and directing activities. Indeed, it is undisputed that as owner and CEO of Seek, Ferman personally approved and drafted some

NO JS6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-09511-RGK | Date | September 16, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Seek Capital, LLC et al.* | | |

of Seek's representations, including within telemarketing scripts. (*See, e.g.*, FTC RSF ¶¶ 32, 51, 168.) Moreover, Ferman was aware that Seek's representations concerning "loans" could potentially be "misleading," and he had received and responded to consumer complaints regarding Seek's business practices. (*Id.* ¶¶ 34, 35, 97.) Additionally, in 2022, the First National Bank of Omaha personally addressed Ferman in its letter requesting Seek cease-and-desist its "credit card stacking scheme." (*Id.* ¶ 114.) Again, Defendants do not dispute these facts, which all illustrate Ferman's knowledge, or at least reckless indifference to the truth, of the material misrepresentations Seek has made.

In their opposition, Defendants make the blanket claim that there is a genuine dispute of material fact as to whether Ferman should be individually liable, but they fail to cite any support facts or case law. Regardless, there is no genuine dispute in the record that Ferman had the requisite involvement, control, and knowledge to be individually liable for injunctive and monetary relief for Seek's violations at issue. Thus, the Court concludes that it is proper to hold Ferman individually liable for Seek's wrongdoings, and **GRANTS** the FTC's Motion.

    a.  *Scope of Injunctive and Monetary Relief*

Pursuant to Section 19(b) of the FTCA, the Court can grant monetary relief for violations of the rules, including the TSR. *See* 15 U.S.C. § 57b(b); *United States v. MyLife.com, Inc.*, 567 F. Supp. 3d 1152, 1170 (C.D. Cal. 2021). Additionally, Section 13(b) authorizes the Court to grant a permanent injunction against violations of any provisions of law enforced by the FTC. *See* 15 U.S.C. § 53(b).

The FTC asserts that the Court should order injunctive and monetary relief and that the scope of its requested relief is proper because of the seriousness of the present violations and Defendants' history of prior violations. In its opposition, Defendants argue that the FTC's proposed judgment exceeds the seriousness of the violations at issue and that there is a genuine dispute of material fact as to the total monetary amount Seek received from its business operations.

As addressed above, the Court finds that genuine issues of material fact exist as to the Defendants' full liability for the claims at issue. While the Court grants the FTC's Motion for Summary Judgment of some claims, others remain disputed and cannot be decided at this stage of the proceedings. Since there are open questions of liability in this action, the Court finds that genuine disputes of fact remain as to the scope of relief Defendants are liable for. *See Lambert Corp. v. LBJC Inc.*, 2014 WL 2737913, at *5 (C.D. Cal. June 16, 2014) (declining to address what remedies are available to plaintiff because genuine issues of material fact existed as to claim liability); *DuffBrown v. City and County of San Francisco*, 2013 WL 163530, at *7 (N.D.Cal. Jan.15, 2013) ("Because the Court has denied summary judgment as to liability, it need not rule on damages at this time."); *IJL Midwest Milwaukee, LLC v. It's Just Lunch Int'l, LLC*, 2022 WL 744055, at *4 (D. Nev. Mar. 11, 2022) ("Because genuine disputes remain on some claims, I deny summary judgment on whether injunctive relief is appropriate.").

NO JS6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-09511-RGK | Date | September 16, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Seek Capital, LLC et al.* | | |

Accordingly, the Court **DENIES** the FTC's Motion for Summary Judgment of the scope of injunctive and monetary relief.

### B. Conclusion

For the foregoing reasons, the Court **GRANTS in part** the FTC's Motion for Summary Judgment. Specifically, the Court holds as follows:

1. The FTC's Motion for Summary Judgment of violations of the FTCA and TSR as to misrepresentations about relationships with lenders, line of credit capabilities, financing terms, no fees until funding, and credit score impact is **GRANTED**. The FTC's Motion for Summary Judgment of violations of the FTCA and TSR as to all other grounds for misrepresentation are **DENIED**.
2. The FTC's Motion for Summary Judgment of FTCA violations as to Defendants' billing practices related to its early termination fees and charging for certain services not provided is **GRANTED**. The FTC's Motion for Summary Judgment of FTCA violations as to all other billing practices are **DENIED**.
3. The FTC's Motion for Summary Judgment of the CRFA violation is **GRANTED**.
4. The FTC's Motion for Summary Judgment that Seek acted as a common enterprise is **GRANTED**.
5. The FTC's Motion for Summary Judgment of the failure of all affirmative defenses except for the fifth affirmative defense as it relates to damages is **GRANTED**. The FTC's Motion for Summary Judgment of the failure of the fifth affirmative defense is **DENIED** as it relates to damages.
6. The FTC's Motion for Summary Judgment that Ferman is individually liable for injunctive and monetary relief for Seek's wrongdoings is **GRANTED**.
7. The FTC's Motion for Summary Judgment for the scope of injunctive and monetary relief is **DENIED**.

The Court now proceeds to consider Ferman's Motion for Partial Summary Judgment.

## V. DEFENDANT FERMAN'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### A. Discussion

Ferman moves for partial summary judgment on essentially two issues: (1) whether the Court must defer to the FTC's request for relief in this case; and (2) the scope of injunctive relief.

First, Ferman asserts that the Court is not required to defer to the FTC on the scope of injunctive relief, citing to the Supreme Court's recent ruling in *Loper Bright Enters. v. Raimondo*, 603 U.S. 369,

Case 2:24-cv-09511-RGK-MAA    Document 137    Filed 09/16/25    Page 18 of 19    Page ID #:11237

NO JS6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-09511-RGK | Date | September 16, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Seek Capital, LLC et al.* | | |

396 (2024) for support. In its Opposition, the FTC states that *Loper Bright Enters.* is inapplicable give that it is requesting that the Court issue an injunction with an appropriate remedy pursuant to Section 13(b) of the FTCA. Additionally, the FTC confirms that it is requesting the Court to issue an injunction with an appropriate remedy under Section 13(b). Thus, there is no dispute that Section 13(b) "gives the federal courts broad authority to fashion appropriate remedies for violations of the" FTCA. *F.T.C. v. Pantron I Corp.*, 33 F.3d 1088, 1102 (9th Cir. 1994).

Second, Ferman asserts that if injunctive relief is ordered against him, the scope should be narrower than what the FTC has requested. As explained above, genuine issues of material fact exist as to Defendants' full liabilities for the claims asserted in this action. As a result, there are genuine disputes as to the appropriate scope of relief.

### B. Conclusion

Accordingly, the Court **DENIES** Ferman's Motion for Partial Summary Judgment.

## VI. CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** the FTC's Motion for Summary Judgment, and **DENIES** Ferman's Motion for Partial Summary Judgment.

Specifically, the Court holds as follows:

1. The FTC's Motion for Summary Judgment of violations of the FTCA and TSR as to misrepresentations about relationships with lenders, line of credit capabilities, financing terms, no fees until funding, and credit score impact is **GRANTED**. The FTC's Motion for Summary Judgment of violations of the FTCA and TSR as to all other grounds for misrepresentation are **DENIED**.
2. The FTC's Motion for Summary Judgment of FTCA violations as to Defendants' billing practices related to its early termination fees and charging for certain services not provided is **GRANTED**. The FTC's Motion for Summary Judgment of FTCA violations as to all other billing practices are **DENIED**.
3. The FTC's Motion for Summary Judgment of the CRFA violation is **GRANTED**.
4. The FTC's Motion for Summary Judgment that Seek acted as a common enterprise is **GRANTED**.
5. The FTC's Motion for Summary Judgment of the failure of all affirmative defenses except for the fifth affirmative defense as it relates to damages is **GRANTED**. The FTC's Motion for Summary Judgment of the failure of the fifth affirmative defense is **DENIED** as it relates to damages.

NO JS6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-09511-RGK | Date | September 16, 2025 |
|---|---|---|---|
| Title | ***Federal Trade Commission v. Seek Capital, LLC et al.*** | | |

6. The FTC's Motion for Summary Judgment that Ferman is individually liable for injunctive and monetary relief for Seek's wrongdoings is **GRANTED**.
7. The FTC's Motion for Summary Judgment for the scope of injunctive and monetary relief is **DENIED**.
8. Ferman's Motion for Partial Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**

                                                                                        Initials of Preparer            JRE/gz